George Julius Gehron
Cheryl Lee Gehron
25079 Portica Court
Wildomar, California 92595
In Pro Per
(951) 677-6764
(951) 677-6825 (Fax)

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| GEORGE J. GEHRON and CHERYL L. GEHRON, | Case No.: CV10 - 07833 |
| Plaintiffs, | COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934- CHURNING OF ACCOUNT |
| vs. | |
| NATIONPOINT, BANK OF AMERICA, N.A., LASALLE BANK, N.A., MERRILL LYNCH, BAC HOME LOANS SERVICING, LP [f/k/a NATIONPOINT LOAN SERVICES, and HOME LOAN SERVICES, INC. d/b/a FIRST FRANKLIN LOAN SERVICES (HLS)], T.D. SERVICE COMPANY, FIDELITY NATIONAL TITLE COMPANY, MERS (MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.), et al. | |
| Defendants. | |

Plaintiff(s), GEORGE J. GEHRON and CHERYL L. GEHRON ("GEHRON"), for its complaint against defendants NATIONPOINT, ("NationPoint"), BANK OF AMERICA, N.A. ("B of A"), LASALLE BANK, N.A. ("Lasalle"), MERRILL LYNCH ("Merrill Lynch"), BAC HOME LOANS SERVICING, LP [f/k/a NATIONPOINT LOAN SERVICES, and HOME LOAN

SERVICES, INC. d/b/a FIRST FRANKLIN LOAN SERVICES (HLS)] (BAC HLS), T.D. SERVICE COMPANY ("TD"), FIDELITY NATIONAL TITLE COMPANY ("Fidelity Title"), and MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("MERS") (collectively, "Defendants") alleges as follows:

## PARTIES

1. At all relevant times, plaintiff maintains residency and operates and conducts business in California.

2. Plaintiff is informed and believes, and on that basis alleges that, at all relevant times, Defendants were corporations organized and operating under the laws of the United States of America, and were duly licensed to engage in the business of securities broker, securities dealer, and investment adviser, and were a member firm of the National Stock Exchange Inc., subject to their respective Constitutions and Rules, as well as a member of the Securities Exchange Commission, subject to its Rules.

3. Plaintiff is informed and believes, and on that basis alleges that, at all relevant time's Defendants were a registered representative, engaged in business as a securities salesperson, and an officer(s) and employee(s) of NationPoint, B of A, Lasalle, Merrill Lynch, BAC HLS., TD., Fidelity Title, or MERS.

4. At all relevant times Defendants acted as a debt collector for a "Mortgage Debt", duly authorized to conduct business in the United States of America duly licensed to engage in the business of securities broker and securities dealer, and was a member firm of the National Stock Exchange, Inc., subject to their respective Constitutions and Rules, as well as a member of the Securities Exchange Commission, subject to its Rules.

5. Defendants maintained their offices for the transactions of their business at: *NATIONPOINT: 25530 COMMERCENTRE DRIVE, LAKE FOREST, CA. 92630; BANK OF AMERICA, N.A.: 100 NORTH TRYON STREET, CHARLOTTE, NC 28202; LASALLE BANK, N.A.:135 SOUTH LASALLE STREET, SUITE 1825, CHICAGO, IL 60603; MERRILL LYNCH: 222 BROADWAY, 17TH FLOOR, NEW YORK, NY 10038-2510; BAC HOME LOAN SERVICING, LP: 2505 W. CHANDLER BLVD., CHANDLER, AZ 85224; NATIONPOINT LOAN SERVICES & HOME LOAN SERVICES, INC.: 150 ALLEGHENY CENTER MALL, PITTSBURGH, PA 15212; FIRST FRANKLIN LOAN SERVICES (HLS): 2150 NORTH FIRST STEET,*

*SAN JOSE, CA 95131; T.D. SERVICE CO.: 1820 E. 1ST STREET, #210, SANTA ANA, CA 92705; FIDELITY NATIONAL TITLE: 601 RIVERSIDE AVENUE, JACKSONVILLE, FL 32204; and MERS: 3300 SW 34TH AVENUE, SUITE 101, OCALA, FL. 34474* within the territorial confines of the United States of America.

6. At all relevant times, defendants' officers and directors acted as clearing agents for Defendants' transactions for Gehron, a customer.

## JURISDICTION

7. The Trustee brings this action pursuant to the authority conferred by *Section 21(d)* of the Exchange Act *15 U.S.C. §78u(d)* seeking to restrain and enjoin permanently Defendants from violating Section 14(a) of the Exchange Act *15 U.S.C. § 78n(a)* and *Rule 14a-9* thereunder *17 C.F.R. §240.14a-9*. The Trustee also seeks a final judgment ordering Defendants to pay a civil money penalty pursuant to *Section 21(d)(3)* of the Exchange Act *15 U.S.C. §78u(d)(3)* and such equitable and other relief that may be appropriate or necessary for the benefit of investors *15 U.S.C. §78u(d)(5)*.

8. This action arises under the *Securities Act of 1933* and the *Securities Exchange Act of 1934*, as amended, and *Rules 10b-5* of the General Rules and Regulations promulgated by the *Securities and Exchange Commission, Rule 12(2)* of the Rules of the *Exchange Act Rule 20(a)* of the Rules of the National Stock Exchange, so that this court has jurisdiction over the matter under *15 U.S.C. §§ 77v, 78aa* and *28 U.S.C. § 1331* as well as the principles of supplemental jurisdiction.

## HISTORY ON SECURITIZATION

9. The traditional mortgage model involved a bank originating a loan to borrower/homeowner and retaining the credit (default) risk. With the advent of securitization, the traditional model has given way to the "originate to distribute" model, in which banks essentially sell the mortgages and distribute credit risk to investors through mortgage-backed securities. Securitization meant that those issuing mortgages were no longer required to hold them to maturity. By selling the mortgages to investors, the originating banks replenished their funds, enabling them to issue more loans and generating transactions fees. This created a moral hazard in which and increased focus on processing mortgage transactions was incentivized but ensuring their credit quality was not. (1),(2)

COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934-CHURNING ACCOUNT
3

10. Securitization accelerated in the mid-1990s. The total amount of mortgage-backed securities issued almost tripled between 1996 and 2007, to $7.3 trillion. The securitized share of subprime mortgages (i.e., those passed to third-party investors via MBS) increased from 54% in 2001, to 75% in 2006. (3) American homeowners, consumers, and corporations owed roughly $25 trillion during 2008. American banks retained about $8 trillion of that total directed as traditional mortgage loans. Bondholders and other traditional lenders provided another $7 trillion. The remaining $10 trillion came from securitization markets. The securitization markets started to close down in the spring of 2007 and nearly shut-down in the fall of 2008. More than a third of the private credit markets thus became unavailable as a source of funds. (4)(5) In February 2009, Ben Bernanke stated that securitization markets remained effectively shut, with the exception of conforming mortgages, which could be sold to Fannie Mae and Freddie Mac. (6)

11. A more direct connection between securitization and the subprime crisis relates to a fundamental fault in the way that underwriters, rating agencies and investors modeled the correlation of risks among loans in securitization pools. Correlation modeling- determining how the default risk of one loan in a pool is statistically related to the default risk for other loans-was based on a "Gaussian copula" technique developed by statistician David X. Li. This technique, widely adopted as a means of evaluating the risk associated with securitization transactions, used what turned out to be an overly simplistic approach to correlation. Unfortunately, the flaws in this technique did not become apparent to market participants until after many hundreds of billions of dollars of ABS and CDOs backed by subprime loans had been rated and sold. By the time investors stopped buying subprime-backed securities, which halted the ability of mortgage originators to extend subprime loans; the effects of the crisis were already beginning to emerge. (7)

12. Nobel laureate Dr. A. Michael Spence wrote: "Financial innovation, intended to redistribute and reduce risk, appears mainly to have hidden it from view. An important challenge going forward is to better understand these dynamics as the analytical underpinning of an early warning system with respect to financial instability." (8)

## CAUSE OF ACTION

13. On or about March 25th, 2007, plaintiff entered into Mortgages with the Defendants on a property which is situated in California.

COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934-CHURNING ACCOUNT
4

14. Plaintiff is represented by Cheryl Lee Gehron, Secured Party Creditor and Trustee of the "GEHRON FAMILY EXPRESS TRUST", duly authorized to act on all matters regarding the appropriation and administration of the estate.

15. On or about September 16th 2009, Defendants filed a foreclosure action (i.e. collection proceedings) against the Plaintiff on the property.

16. On or about July 20th 2010 through October 14th 2010, defendants alleged that they lost the note and or it was destroyed, which both statements were unintelligible and ambiguous, fraudulent by knowing full well the note was securitized and sold in connection with a public offering.

17. On or about July 25th 2010, Plaintiff was informed that the account on the said mortgage was securitized and sold on the New York Stock Exchange, however, it was upon the Plaintiffs discovery the accounts associated with the "Mortgages" and "Notes" were being traded through separate Fidelity Funds.

18. On or about September 3rd 2010, Plaintiff securitized the said property, by preparing a Uniform Commercial Code Financial Statement filed with the California Secretary of State, which was a "fixture filling" and was perfected under U.C.C. Article 9.

19. On or about August 11th 2010, Plaintiff served actual and constructive notice to the Defendants regarding a letter of _"Notice of Right to Cancel"_ under the _"Truth in Lending Act", 15 U.S.C. §1601 et seq; 12 C.F.R. Part 226)_, yet, Defendants ignored the Plaintiffs requests, which were based on the discovery of Gehron of fraud, inducement, concealment, and fraudulent misrepresentation, civil conspiracy.

20. On or about July 15th 2010, Plaintiff discovered that the Defendants had acquired funds through the _"Discount Treasury Window"_ and borrowed against the Plaintiff GEORGE J. GEHRON Federal Reserve Bank Account #0210-0120-8/B1443XXXX (2nd District), associated with S.S.N. XXX-XX-2856 which both are jurisdictionally located in the The UNITED STATES.

21. On or about July 15th 2010, Plaintiff discovered that the Defendants had acquired funds through the _"Discount Treasury Window"_ and borrowed against the Plaintiff CHERYL L. GEHRON Federal Reserve Bank Account #0410-0001-4/D4101XXXX (4th District), associated with S.S.N. XXX-XX-4960 which both are jurisdictionally located in the The UNITED STATES.

22. As of August 23rd 2010, Plaintiff is informed and believes that the Defendants failed to claim the funds on the property by neglecting to file an Original Issue Discount with the Internal Revenue Service, and therefore, has abandoned the funds or has failed to appropriately report income from their hedging activity.

23. On many occasions Plaintiff requested validation of the debt and request various document in which the Defendants have failed to produce, i.e. *(FR2046)* OMB: 7100-0289 Accounting Statement *"Balance Sheet for Discount Window Borrowers"* to show the appropriation of the funds and location of the pooled securities, and as further required by the Board of Governors of the Federal Reserve System.

24. Defendant at all times relevant failed to produce Servicing and Pooling Agreements between the parties.

25. On or about August 26th 2010, Plaintiff conveyed the property into an existing "Express Trust" to solidify the true Secured Party Creditors position and interests.

26. At no time mentioned did the Defendants disclose the actions and procedures of the securitization process, nor did it disclose the benefits and disadvantages to hedging the account, nor did it provide valid executed shareholder agreements, pledge agreements, or any disclosures in relation to the said Fidelity Fund.

27. At all relevant times, Defendants, as a result of the control exercised over plaintiff's brokerage account, had a fiduciary duty and standard of care to plaintiff in all of their transactions with and for the plaintiff.

28. At all relevant times, Defendants had the duty not to use or employ in connection with the purchase and sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of the Rules and Regulations promulgated by the Securities & Exchange Commission as necessary or appropriate in the public interest or for the protection of investors.

29. At all relevant times, Defendants had the duty under the statutes, rules, and regulations cited above to use due diligence, to have learned the essential facts relative to plaintiff and to operate plaintiff's brokerage account in a fashion that would not cause an

excessive trading or selling or purchasing securities without regard to plaintiff's situation and instructions.

30. At all relevant times, Defendants had the common-law fiduciary duty, as well as the duty under the statues, rules, and regulations cited above, to recommend to plaintiff and to sell or purchase for plaintiff only those securities that they had reasonable grounds for believing were suitable for plaintiff on the basis of the facts disclosed by plaintiff to defendant regarding Gehron and his financial situation and needs. Defendant also had the common-law fiduciary duty to have had reasonable grounds to believe that any sale or purchase of securities made by defendants for plaintiffs' account was suitable for plaintiff on the basis of information furnished by plaintiff to defendants after reasonable inquiry concerning plaintiff's investment objectives, financial situation, needs and any other information known to Defendants.

31. On or about March 25th 2007, Plaintiff obtained a certain line of credit a "Mortgage" which at all times relevant was a "Consumer Debt" from the defendant(s). This allegation supports an element of this cause of action, in that the transaction and account number was made in connection with a public offering.

32. On or about March 25th 2007, while Plaintiff obtained certain line of credit from defendant, however, there were untruths or omissions by defendants of which the plaintiff did not know at the time of the offer or sale.

33. On or about March 25th 2007, after accounts were created, without Plaintiff's knowledge, by the use of any means of interstate commerce of the mails. Defendant failed to provide a security agreement between the issuer and Plaintiff, which indicated the details of the transaction.

34. On or about March 25th 2007, defendants purchased for plaintiff's account #: **#33348077-06/100425240013888802/4001388880/1044889733** "Instrument" "*DEED OF TRUST*"

| NAME OF STOCK | NUMBER OF SHARES | PRICE |
|---|---|---|
| **FIDELITY OHIO MUNICIPAL INCOME FUND** | UNKOWN | ____per share |

**CUSIP NUMBER #316412105/FUND #88/SYMBOL=FOHFX**

35. During the period described above, the defendants wrongfully exercised control and dominion over Plaintiff's brokerage account in violation of express conditions given to Defendants at the time that the account was opened. In particular, the Defendants executed multiple separate transactions during this period.

36. By use of means and instrumentalities of interstate commerce and of the mails, and the facilities of National Securities Exchanges, Defendants employed a device, scheme, and artifice to defraud Plaintiff, and Defendants engaged in a practice and course of conduct that operated fraud on Plaintiff in connection with the purchase and sale of securities. Among other things, Defendants wrongfully manipulated Plaintiff's account with excessive sell and buy orders in a manner disproportionate to its size, character, and the objectives and instructions of Plaintiff, bought and sold securities within short periods of time, switched securities from one to another without any investment justification other than to generate brokerage commissions for Defendants' profit, executed transactions in violation of Plaintiff's specific instructions, continuously maintained Plaintiff's account at maximum or near maximum allowable margin, thus endangering Plaintiff's investments in any declining market, and used Plaintiff's account in margin transactions to obtain maximum commissions on executed orders.

37. The actions of Defendants were not suitable to Plaintiffs purchasing objectives, financial situation, and needs and were in violation of Plaintiff's express instructions, the anti-fraud provisions of the statutes, rules, and regulations cited above.

38. In connection with the transactions described above, defendants failed in their fiduciary duty to Plaintiff.

39. On or About March 25th 2007, Defendants sold to Plaintiff an undisclosed number of shares of stock in a Fidelity Investments for an unknown price, plus commission and other fees.

40. Prior to Plaintiff discovering that Defendant had committed a conversion of a security instrument, Plaintiff received from a secure source a detailed report thereof accounts being publicly trading and illegally withheld from Plaintiff.

41. Any written prospectus covering the shares offered and sold to Plaintiff failed to disclose that:

    a.  Defendants were very profitable and business was continuing to expand while it concealed the existence of an account, in the Plaintiff's possession with an unknown value as of the date of this complaint.

    b.  Defendants encumbered the said fund and had accounts receivable of in excess of accounts payable and other debts totaling $370,500.00 while failing to prove ownership.

42. Plaintiff still owns the subject shares of the Fidelity Investment Fund.

43. Defendant directly, by the use of a means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, intentionally devised, and schemed to artifice to defraud.

44. Defendant engaged in the act and practice during the ordinary course of business which operated fraud and deceit upon Plaintiff in connection with the purchase or sale of any security which violates *17 C.F.R. §240.10b-5 (1997)* also *See U.S. v. O'Hagan, 117 S. Ct. 2199, 2207, 138 L. Ed. 2d 724 (U.S. 1997)* the private right of action under section *10(b) and Rule 10b-5.*

45. Plaintiff has the remedial right and remedy under *U.C.C. 1-201 (32) (34)*, inter alia, to invoke their Right of Rescission as further evidence of the fraud committed.

46. By virtue of the foregoing conduct, Defendants; directly or indirectly, violated *Section 14(a)* of the Securities Exchange Act of 1934 ("Exchange Act") *15 U.S.C. §78n(a)* and *Rule 14(a)* thereunder *17 C.F.R. §240.14a-9.* Unless permanently restrained and enjoined, the Defendants will again engage in the acts and transactions set forth in this complaint or in acts and transactions of similar type and object.

47. Beginning on or about March 25th 2007, and at various other times thereafter, Defendants met, joined together, planned, and conspired to transfer and conceal assets of NationPoint, Lasalle and B of A for the purpose of rendering them insolvent and unable to pay their creditors, including Plaintiff, by creating fictitious debts owed by NationPoint, Lasalle and B of A to MERS and by making cash payments and transfers of tangible assets to MERS in purported payment of such debts.

48. All named Defendants agreed or understood that the purpose of their meetings and agreements was as described in Paragraph 47, understood that both their purpose and their methods of achieving this purpose were unlawful and would result in injury to

Plaintiff and others, and agreed and understood that each would act in concert with the others to achieve this purpose.

49. Beginning on or about March 25th 2007, and continuing until the present time, and in furtherance of the conspiracy described in Paragraph 48, Lasalle, purportedly acting on behalf of NationPoint, has issued checks in the amount of at least the amount as set forth herein written upon NationPoint accounts, and transferred business inventory valued at not less than amount as set forth herein to itself and to MERS. Defendants, NationPoint, Lasalle, Merrill Lynch and MERS have transferred, concealed, and dissipated the aforementioned funds and assets as they have received them, thus making it impossible or prohibitively expensive to trace and recover them. Defendant, B of A, presently claims to be insolvent and unable to satisfy its debts, including those owed to Plaintiff.

50. Defendants undertook the acts described in Paragraph 47 with malice and intent to injure Plaintiff, among others.

51. Defendant, MERS, undertook the acts described in Paragraph 47 for its unlawful individual gain, and did so neither for the benefit of, nor while acting in the role of lawful agent for NationPoint.

52. The acts described in Paragraph 47 were both unlawful and tortious, constituting conversion of corporate assets and the unlawful conveyance of property in defraud of creditors.

53. As a result of the acts described in Paragraph 47, Defendant, B of A, has been rendered insolvent and unable to pay its debts. Plaintiff has consequently been unable to satisfy the default against Defendant, B of A, described in Paragraph 49 or to otherwise recover upon the debts lawfully owed by Defendant. Plaintiff has incurred expenses in the amount as set forth herein in attempting to collect such debt and has suffered further loss in the amount as set forth herein as a result of the loss of the use of such funds. Plaintiff has thereby incurred pecuniary losses in the amount as set forth herein.

54. Unless prevented by appropriate injunctive measures, Defendants will continue to inflict injury upon Plaintiff by continuing to conceal assets of NationPoint, Lasalle, Merrill Lynch, B of A and MERS and engaging in various deceptive measures intended to prevent discovery and recovery of such assets by lawful creditors of NationPoint, Lasalle, Merrill Lynch, B of A and MERS, including Plaintiff.

## COUNT I

### SECURITIES FRAUD UNDER 15 U.S.C. § 77q (The Gramm-Leach-Bliley Act)

#### (As to all Defendants)

55. Plaintiff repeats each and every allegation contained in Paragraphs 1 through 46, as though fully set forth here.

56. Defendant offered to sell the security with no agreement between the issuer, and obtained money or property by means of any untrue statement of a material fact or omission to state a material fact necessary in order to make the statement made.

57. As a result of the transactions described above and defendants' wrongful acts and omissions, plaintiff's account has been charged with brokerage commissions in the sum of an unknown amount, and in the event that there are further sales by defendant as a result of failure of plaintiff to meet alleged margin calls, plaintiff's account will be charged with further brokerage commissions, *Pub.L.106-554, 48 Stat*.

58. The transaction in dispute included an untrue statement of material fact or omitting a material fact; *15 U.S.C. § 77q (a) (3)* engaged in a transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

59. *Securities Regulation 60.28(4)* cites an insider in possession of material non-public information is prohibited by Federal Securities Exchange laws from trading on the information unless he makes public disclosure.

60. As a result of the transactions described above and defendants' wrongful acts and omissions, plaintiff has sustained dividend losses for the period March 25th 2007 to October 14th 2010, in the sum of $84,600.00

## COUNT II

### SECURITIES FRAUD UNDER SECURITIES EXCHANGE ACT OF 1934 § 10(b)

61. Plaintiff repeats each and every allegation contained in Paragraphs 1 through 46, as though fully set forth here.

62. Defendant manipulated and deceptively devised and or contrivance in contravention of such rules and regulations as the Commission set forth appropriately in the best interest of the public and for the protection of investor, also see, section *206B of the Gramm-Leach-Bliley Act.*

63. As a result of the actions of Defendants, Plaintiff has been deprived of the specific securities that Plaintiff wishes to retain, as set forth above.

64. As a result, plaintiff has been injured and damaged in the sum within the jurisdictional limits of this Court.

## COUNT III

### SECURITIES FRAUD UNDER SECURITIES EXCHANGE ACT OF 1934 § 12(a)

65. Plaintiff repeats each and every allegation contained in Paragraphs 1 through 46. As though fully set forth here.

66. This cause arises from a connection with a public offering *See In re Syntex Corp. Securities Litigation, 855 F. Supp. 1086, 1098 (N.D. Cal 1994), aff'd 95 F. 3d 922 (9th Cir. 1996)*.

67. Plaintiff did not consent or provide an application as set forth in *Sec. 12 (b)* of the Securities Exchange Act of 1934.

68. As a result of the actions of the defendants in purchasing the securities described above, plaintiffs have had added to the Gehron account securities that they did not wish to own, which have declined substantially in price since the purchase by defendants, which have resulted in margin calls from defendants to post additional margin, threats of sale by defendants for failure to post such margin, and sale of some of the securities by defendants.

69. As a result of these actions, plaintiff has been injured and damaged in the sum within the jurisdictional limits of this Court.

## COUNT IV
### CIVIL CONSPIRACY UNDER 18 U.S.C. § 371

70. Plaintiff incorporates by reference the factual allegations contained in Paragraphs 47 through 54.

71. The factual misrepresentation and omission set forth in paragraphs 47-54 were material, in that there is a "substantial likelihood" that the Plaintiff would have considered the misrepresentation and omitted facts important in deciding whether to enter into the aforementioned agreement.

72. At the time Defendants induced Plaintiff to purchase the subject shares of the said Fidelity Investment accounts, Plaintiff did not know that the material representations set

forth in Paragraphs 47-54 were true or that the written prospectus or representation made to Plaintiff by Defendants regarding the fund existed by Defendants failing to disclose the material information set forth in Paragraphs 47-54.

73. Defendant and its officers, directors, agents and assigns conspired either to commit the offense against the Plaintiff and the United States by doing a lawful act by unlawful means, by doing the above mentioned overt act in pursuance of the conspiracy, and damages the Plaintiff as a result of the acts done in furtherance of the conspiracy to defraud, also see *Pub.L.103-322, 108 Stat., United States v. Walter, 1923, 44 S. Ct. 10, 263 U.S. 15, 68 L. Ed. 137.*

**WHEREFORE**, Plaintiff prays that the Court:

1. Declare Defendants to have engaged in a civil conspiracy to inflict injury upon the Plaintiff, and to therefore be jointly and severally liable for all damages awarded by the Court without allocation, apportionment, or limitation of liability.
2. Enjoin Defendants from committing any further acts in furtherance of said conspiracy.
3. Award Plaintiff compensatory and incidental damages in an amount not less than amount as set forth above.
4. Award Plaintiff punitive damages in such amount as the Court may deem appropriate to penalize Defendants for their intentional and malicious acts of misconduct.
5. Award Plaintiff the costs of this action and any subsequent appeal, together with such other relief, not necessarily limited to pecuniary relief, as the Court may deem Plaintiff entitled to receive.
6. Award Plaintiff for damages in the sum of $455,100.00, plus such further sums as damages as may in the further, pending the trial of this action, occur;
7. Award Plaintiff treble damages
8. Award Plaintiff for prejudgment interests as provided by law;
9. Award Plaintiff for punitive or exemplary damages in an amount no less than $25,000.00. Against Defendants in an amount no less than $15,000.00 against the above mentioned parties;
10. Award Plaintiff for reasonable attorney's fees and expenses;
11. Award Plaintiff for cost of suit; and

12. Award Plaintiff for any and all other further relief as may be proper.

Date: 10/15/2010

Respectfully Submitted,

*C., Authorized Agent, Trustee*

Cheryl Lee Gehron, Authorized Agent, Trustee
25079 Portica Court
Wildomar, California 92595
951-677-6764

### DEMAND FOR JURY TRIAL

Plaintiff moves this court pursuant to Fed.R.Civ.P. Rule 38 *"Jury Trial of Right"* and thereby demand a Jury Trial. The undersigned certifies that a copy hereof has been furnished to the parties listed in the Certificate of Service.

By: *C., Authorized Agent, Trustee*
Cheryl Lee Gehron, Authorized Agent, Trustee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail, Hand Delivery, and Process Server to the below mentioned on this 15th, day of October, 2010.

NATIONPOINT, N.A.
25530 COMMERCENTRE DRIVE
LAKE FOREST, CA. 92630

BANK OF AMERICA, N.A.
100 NORTH TRYON STREET
CHARLOTTE, N.C. 28202

LASALLE BANK, N.A.
135 SOUTH LASALLE STREET, SUITE 1825
CHICAGO, IL 60603

MERRILL LYNCH
222 BROADWAY, 17TH FLOOR
NEW YORK, NY 10038-2510

BAC HOME LOAN SERVICING, LP
2505 W. CHANDLER BLVD.
CHANDLER, AZ. 85224

NATIONPOINT LOAN SERVICES
150 ALLEGHENY CENTER MALL
PITTSBURGH, PA. 15212

FIRST FRANKLIN LOAN SERVICES (HLS)
2150 NORTH FIRST STREET
SAN JOSE, CA. 95131

T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
SANTA ANA, CA. 92705

FIDELITY NATIONAL TITLE COMPANY
601 RIVERSIDE AVENUE
JACKSONVILLE, FL. 32204

FMR, L.L.C. FIDELITY INVESTMENTS
82 DEVONSHIRE STREET
BOSTON, MA. 02109-3605

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT
3470 TWELFTH STREET
RIVERSIDE, CA. 92501

MERS (MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.)
3300 S.W. 34TH AVENUE, SUITE 101
OCALA, FL. 34474

By: _____
Cheryl Lee Gehron, Authorized Agent, Trustee

## VERIFICATION

STATE OF CALIFORNIA

COUNTY OF Riverside

BEFORE ME, the undersigned authority, on this day personally appeared, Cheryl Lee Gehron, Authorized Agent, Secured Party Creditor and Trustee who under oath stated that she is the Plaintiff on whose behalf the foregoing Complaint is filed, that he is legally competent to make this Verification, which is based on his personal knowledge, and that the factual statements contained in Paragraphs 1-73 of the foregoing Complaint are true and correct.

By: *Authorized Agent, Trustee*

Cheryl Lee Gehron, Authorized Agent, Trustee

I, Cheryl Lee Gehron, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of my knowledge.

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this document and acknowledged to me that he/she executed the same in his authorized capacity and that by his signature on this instrument who is the person who executed this instrument.

Cheryl Lee Gehron, Authorized Agent, Trustee
25079 Portica Court
Wildomar, California 92595
951-677-6764

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

(see attached)

| NOTARY PUBLIC IN AND FOR | NOTARY SEAL |
| THE STATE OF CALIFORNIA | |

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], not Notary)

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____

Signature of Document Signer No. 1    Signature of Document Signer No. 2 (if any)

State of California
County of RIVERSIDE

Subscribed and sworn to (or affirmed) before me on this 15th day of OCTOBER, 2010, by

(1) CHERYL LEE GEHRON,
Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me (.)

(and _____)

(2) _____,
Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me.)

Signature _____
Signature of Notary Public

[Notary Seal: RANDALL E. CAMPBELL, Commission # 1727474, Notary Public - California, Riverside County, My Comm. Expires Mar 26, 2011]

Place Notary Seal Above

---— OPTIONAL ———

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: Verification

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

RIGHT THUMBPRINT OF SIGNER 1 — Top of thumb here
RIGHT THUMBPRINT OF SIGNER 2 — Top of thumb here

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5910    Reorder: Call Toll-Free 1-800-876-6827

## FOOTNOTES

(1) Lewis, Holden (18 April 2007). "Moral hazard' helps shape mortgage mess" Bankrate.com

(2) "Originate-to-Distribute" model and the subprime mortgage crisis http://papers.ssrn.com

(3) Demyanyk, Yuliya; Van Hemert, Otto (19 August 2008) "Understanding the Subprime Mortgage Crisis". Working Paper Series. Social Science Electronic Publishing

(4) "Nicole Gelinas (1 January 2009) "Can the Fed's Uncrunch Credit?" City-journal.org

(5) Brookings Institute- U.S. Financial and Economic Crisis June 2009 PDF Page 14 http://www.brookings.edu/papers/2009/0615_economic_crisis_bailey_elliott.aspx

(6) http://www.federalreserve.gov/newsevents/testimony/bernanke20090224a.htm

(7) Salmon, Felix (http://www.felixsalmon.com) (2009-02-23) "Recipe for Disaster: The Formula that Killed Wall Street"

(8) "Lessons from the Crisis" (http://www.pimco.com) US House of Representatives Committee on Government Oversight and reform (22 October 2008) http://oversight.house.gov